## IN THE CIRCUIT COURT FOR BALTIMORE COUNTY

ERIC EISWERT
232 Ridgeway Road
Catonsville, Maryland 21228

*Plaintiff,*

vs.

DAZHON DARIEN
132 S. Newkirk Street
Baltimore, Maryland 21224

and

ZOE WADDELL
21 Hilltop Place
Catonsville, Maryland 21228

and

SHAENA RAVENELL
4 Millpaint Lane, Apt 1A
Owings Mills, Maryland 21117

and

HOMER MCCALL
6901 N. Charles Street
Towson, Maryland 21204

and

BOBETTE WATTS-HITCHCOCK
6210 Park Heights Avenue, 600
Baltimore, Maryland 21215

and

MYRIAM ROGERS
6901 N. Charles Street
Towson, Maryland 21204

and

CASE NO:  C-03-CV-25-000053

1

BOARD OF EDUCATION OF
BALTIMORE COUNTY, *d/b/a*
BALTIMORE COUNTY PUBLIC
SCHOOLS
6901 N. Charles Street
Towson, Maryland 21204
Serve On:
Tiara D. Booker-Dwyer,
Board Chair - Board of Education of
Baltimore County
6901 N. Charles Street
Towson, Maryland 21204

*Defendants.*

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES, Plaintiff, Eric Eiswert, by and through his attorneys, Brian M. Cathell, Matthew B. Thompson, Wais, Vogelstein, Forman, Koch & Norman, LLC, Nicholas C. Bonadio, and Keilty Bonadio, LLC, and hereby sues the Board of Education for Baltimore County d/b/a Baltimore County Public Schools, Individually, and by and through their respective agents, servants, and/or employees including, but not limited to, Dazhon Darien, Shaena Ravenell, Zoe Waddell, Homer McCall, Bobette Watts-Hitchcock, and Myriam Rogers, and Dazhon Darien, individually, Shaena Ravenell, individually, and Zoe Waddell, individually, and for reasons stated as follows:

### I.    INTRODUCTION

1.    Plaintiff Eric Eiswert is a highly credentialed career educator, serving as Principal at Pikesville High School in Baltimore County beginning in 2020. On January 16, 2024, and January 17, 2024, Plaintiff Eiswert became the victim of a carefully planned series of crimes and acts that sought to destroy him professionally and personally. Those crimes and acts were

orchestrated by Dazhon Darien while he was an employee of Baltimore County Public School System ("BCPS").

2.      Defendant Dazhon Darien was never qualified to work in the BCPS system. His resume contained a myriad of lies and exaggerations, the kind that were easily discoverable and disqualifying upon basic vetting. Yet, because BCPS maintained a deliberately indifferent and negligent approach to vetting school employees, Darien was not only hired but was placed in a position of authority at Pikesville High School.

3.      Unbeknownst to Mr. Eiswert and others, upon information and belief, Darien used this position of trust, as well as access to school resources, to record Mr. Eiswert's voice. Darien then took these recordings, cut, edited, created, and assembled the pieces together using artificial intelligence ("AI") and computer tools. The result was a fabricated audio clip, defamatory on its face, falsely purporting to expose Mr. Eiswert as a racist and antisemite.

4.      Darien, by conspiring with other BCPS employees, then caused the audio clip to be disseminated to students and others, causing it to spread rapidly on social media. Within hours and days, the fraudulent audio clip received millions of views and interactions – falsely labeling Mr. Eiswert as a racist and antisemite to a national and international audience.

5.      Mr. Eiswert was subjected to threats of violence and malicious character attacks, along with calls for him to be fired. His family was harassed, and all feared for their safety. His professional and personal life were so harmed that it will be difficult and costly to recover the reputation he worked decades to foster.

6.      In light of the serious nature of the defamatory recording that was being circulated amongst the public, BCPS, and Pikesville High School community, Mr. Eiswert's union representatives immediately had the audio clip analyzed by neutral forensic experts and informed

BCPS representatives that it was, at a minimum, substantially altered, compiled in a fraudulent and deceptive manner, and possibly entirely fabricated using AI tools.

7.     Despite this fact being immediately conveyed to BCPS, including to Superintendent Myriam Rogers, they removed Mr. Eiswert from his position as principal and refused to correct the record and act in accordance with the information they knew to be true. This complete failure to correct the record as it pertained to their long-time employee in the setting of exonerating evidence allowed the national destruction of Mr. Eiswert's reputation to continue. Mr. Eiswert and his family continued to endure public humiliation and violent threats. BCPS arbitrarily and, with deliberate indifference, punished Mr. Eiswert over allegations that were quickly proven false and continue to punish him to this day.

8.     Pursuant to Maryland Rule 2-303(c), Plaintiff sets forth multiple counts and prayers for relief regardless of consistency.

## II.     PARTIES, JURISDICTION, AND VENUE

9.     At all times relevant, Plaintiff Eric Eiswert (hereinafter "Mr. Eiswert") was, and is, a resident of Baltimore County, Maryland.

10.     At all relevant times to this complaint, Mr. Eiswert was employed by Baltimore County Public Schools as the Principal of Pikesville High School, a public school owned and operated by the Board of Education of Baltimore County, d/b/a Baltimore County Public Schools ("Defendant BCPS" and/or "BCPS").

11.     Defendant BCPS is a county school system board of education created under Title 3 of the Education Article of the Maryland Code and controls the Baltimore County Public School System (hereinafter, sometimes referred to as the "School System"). Defendant BCPS is the legal

entity responsible for all actions of the School System and the School System's employees and agents, including all individual and entity Defendants.

12.    Defendant Dazhon Darien (hereinafter "Defendant Darien") is a citizen of Baltimore City, Maryland. At all times relevant to this action, Defendant Darien was a Maryland citizen and was an athletic director and teacher hired by BCPS and assigned to work at Pikesville High School. Darien is sued in his capacity as an employee of BCPS and in his individual capacity.

13.    Defendant Shaena Ravenell (hereinafter "Defendant Ravenell") is a citizen of Baltimore County, Maryland. At all times relevant to this action, Defendant Ravenell was a Maryland citizen and was a teacher hired by BCPS and assigned to work at Pikesville High School. Ravenell is sued in her capacity as an employee of BCPS and in her individual capacity.

14.    Defendant Zoe Waddell (hereinafter "Defendant Waddell") is a citizen of Baltimore County, Maryland. At all times relevant to this action, Defendant Waddell was a Maryland citizen and was a teacher hired by BCPS and assigned to work at Pikesville High School. Waddell is sued in her capacity as an employee of BCPS and in her individual capacity.

15.    At all times Defendants Darien, Ravenell, and Waddell were acting under the color of state law and within the scope of their employment with BCPS.

16.    Defendant Homer McCall is a citizen of Baltimore County, Maryland. At all relevant times, Mr. McCall was the Human Resources Director for BCPS and is now the Chief of Human Resources for BCPS. At all relevant times, Mr. McCall was responsible for overseeing BPCS' hiring program, including checking candidate references, completing background checks, and otherwise vetting potential candidates for hire. Mr. McCall is sued in his individual and official capacities.

17.    Defendant Bobette Watts-Hitchcock is a citizen of Baltimore County, Maryland. At all relevant times, Ms. Watts-Hitchcock was employed by BCPS and was responsible for vetting potential candidates for hire with BCPS, including checking references and completing background checks. Ms. Watts-Hitchcock is sued in her individual and official capacities.

18.    Defendant Myriam Rogers is a citizen of Baltimore County, Maryland. At all relevant times, Ms. Rogers was employed by BCPS as Superintendent and was responsible for Baltimore County Public Schools, including but not limited to vetting potential candidates for hire with BCPS, checking references, completing background checks, and overseeing the hiring process of teachers and employees. Ms. Rogers is sued in her individual and official capacities.

19.    At all relevant times, Mr. McCall, Ms. Watts-Hitchcock, and Ms. Rogers were acting under color of state law and within the scope of their employment with BCPS.

20.    This Court has personal jurisdiction over Defendants pursuant to Maryland Code, Courts & Judicial Proceedings, § 6-103, because the cause of action arose in Maryland.

21.    This Court has subject matter jurisdiction over Defendants pursuant to Maryland Code, Courts & Judicial Proceedings, § 4-401(1), because the amount in controversy is greater than thirty-thousand dollars ($30,000.00).

22.    Venue lies with this Court pursuant to (i) Maryland Code, Courts & Judicial Proceedings, § 6-201(a), because the Defendants reside, carry on a regular business, habitually engage in a vocation, or maintain their principal offices in this County; (ii) Maryland Code, Courts & Judicial Proceedings, § 6-201(b), because there is more than one Defendant and there is no single venue applicable to all Defendants, so all may be sued in a county in which any one of them could be sued; and § 6-202(8), because this is a tort action based in negligence arising in this County.

23.    All notice requirements have been satisfied pursuant to the relevant Tort Claims Act(s).

### III.    FACTS COMMON TO ALL COUNTS

<u>ERIC EISWERT</u>

24.    Mr. Eiswert was the acting Principal of Pikesville High School during the 2023-2024 academic year.

25.    Mr. Eiswert began working as an educator within BCPS in 1997. He served as both a teacher and assistant principal before becoming Principal of Pikesville High School in 2020. Throughout his tenure, Mr. Eiswert has worked to earn his reputation as an educator and member of the community at large.

26.    Mr. Eiswert was often recognized by BCPS for his leadership and performance, including dramatic improvements in student performance metrics at Pikesville High School.

<u>DEFENDANT DARIEN</u>

27.    Dazhon Darien began his employment with BCPS in the Spring of 2023 where he spent several weeks teaching social studies at Randallstown High School.

28.    As reported by the Baltimore Banner, there were at least 16 false claims on the job application materials Darien submitted to BCPS prior to Darien receiving a teaching position at Randallstown High School in the Spring of 2023. Under BCPS hiring policies, once an initial background check is run, an applicant's underlying credentials are not reviewed or verified again – even when applying for different positions.

29.    Upon information and belief, Dazhon Darien submitted two different resumes to BCPS under two different names—Dazhon Darien and Darien Spaulding—with the same phone number on both resumes, when applying for a position within BCPS.

7

30.     The minimum qualifications for a teaching position, for which Darien was originally hired at Randallstown High School, included a bachelor's degree. Darien claimed a bachelor's degree from Langston University, but he did not graduate from there.

31.     Darien also claimed two master's degrees, one from Langston and one from Southern New Hampshire University, but neither program had any record of him receiving a degree.

32.     The athletic director position for which Darien was subsequently hired at Pikesville High School in the 2023-2024 school year required either a master's degree—which Darien did not have—or a Registered Athletic Administrator certificate. Darien claimed to have one of these certificates, but this was subsequently found to be untrue.

33.     Darien listed membership in at least two professional associations that have no record of him. He claimed to have held a high school football coaching job in Texas at the same time the second resume said he was a dean of student engagement at a college in Indiana. Darien claimed to have been a defensive analyst for the University of Nebraska football team, but the college has no record of Darien working there.

34.     In 2016, Florida's education department denied Darien a teaching certificate based on "test or document fraud" and flagged his name on a national clearinghouse for screening teachers.

35.     Darien first worked for BCPS as a social studies teacher at Randallstown High School before accepting the athletic director position at Pikesville High School. Darien never had the required Maryland teaching certificate or educational background to be hired as an educator in the first place, let alone an administrative role requiring additional credentials.

36.     Even the most cursory vetting process would have uncovered the truth about Darien. Yet, he was hired by BCPS as a teacher and then promoted to athletic director, a position of substantial power and influence and control over students, teachers, and coaches.

37.     Soon after Darien started at Pikesville High School in the fall of 2023, Mr. Eiswert began to discover that Darien lacked competence in several areas. Mr. Eiswert first sought to help Darien, to provide advice and counsel, and to mentor him as any reasonable principal would do.

38.     However, Darien's abuses of power came to the forefront in September 2023. Upon information and belief, it was alleged that Mr. Darien arbitrarily fired a coach, spent thousands of dollars on new uniforms without approval, bullied students and other staff members, and was suspected of misappropriating fundraising money.

39.     Following standard protocols as the principal of Pikesville High School, Mr. Eiswert reported Darien's behavior to Kyria Joseph, Executive Director of Secondary Schools at BCPS, and Michael Sye, Director of the Department of Athletics at BPCS as early as September 2023. As additional information regarding Darien's misdeeds became apparent, Mr. Eiswert continued to report Darien's actions and his concerns to BCPS, including to Ms. Joseph and Mr. Sye, through December 2023. Mr. Eiswert reasonably trusted that once Darien's behavior was reported, BCPS would fulfill its responsibility of disciplining Darien and ensuring that Darien was prevented from causing further harm. Despite its obligation, BCPS failed to act with any urgency to address Mr. Eiswert's concerns.

40.     When BCPS failed to act, Mr. Eiswert took the only available action he could and informed Darien in early December 2023 that his contract as the athletic director at Pikesville High School would not be renewed for the 2024-2025 academic year.

"AI" GENERATED AUDIO RECORDING

41.    Despite knowledge of the claims made against Darien, BCPS allowed Darien to continue in his role as athletic director and employee, with unrestricted access to Pikesville High School property, including the BCPS computer network, resources, and infrastructure.

42.    Upon information and belief, shortly after Darien was informed by Mr. Eiswert that his contract as athletic director at Pikesville High School would not be renewed, on 12/18/23, 12/19/23, and 01/15/2024, Darien accessed the BCPS School System computer network to search for OpenAI tools via the internet and Microsoft Bing Chat searches (a service similar to OpenAI). The search histories were associated with paid accounts for OpenAI linked to Darien.

43.    BCPS knew, or should have known, that permitting unrestricted access to these tools by someone facing the same accusations and loss of employment as Darien could result in substantial injury to BCPS employees and students.

44.    Upon information and belief, Darien used a combination of surreptitiously obtained recordings of Mr. Eiswert's voice at Pikesville High School and AI tools to create an artificially fabricated audio recording (the "Fake Audio") portraying Mr. Eiswert as using racist and antisemitic language. Darien knew that the Fake Audio would have substantial consequences for Mr. Eiswert, both personally and professionally and created the Fake Audio for that very purpose.

45.    The Fake Audio contained derogatory comments about the test scores of African American students and disparaging comments about the Jewish community that comprises a substantial portion of the Pikesville High School community. The statements contained in the Fake Audio are defamatory on their face to Mr. Eiswert and the groups identified on the audio.

46.    Upon information and belief, Darien emailed the Fake Audio to Defendants Ravenell and Waddell who were both teachers at Pikesville High School and employees and agents of BCPS, on January 16, 2024.

47.    Defendants Ravenell and Waddell, in their capacity as employees of BCPS, published the Fake Audio directly to students and through other means over the course of January 16, 2024, into January 17, 2024. Both individuals knew, or should have known, that publication of the Fake Audio would cause serious harm to Mr. Eiswert. Neither individual made any effort to authenticate the Fake Audio prior to releasing it publicly.

48.    Defendant Ravenell also published the Fake Audio to several media outlets and the NAACP.

49.    The Fake Audio quickly circulated through the Pikesville High School community before becoming "viral" nationally across social media and traditional media channels.

50.    There was swift and forceful backlash from the community at large directed at Mr. Eiswert.

51.    For example, DeRay McKesson, civil rights activist and executive director of the criminal justice nonprofit Campaign Zero, posted to his nearly one million social media followers that he was "… in no way surprised by his [Eiswert's] comments in this recording," McKesson continued that "[H]e should be fired immediately and his Maryland teaching and administrator licenses should be permanently revoked."

52.    A particularly troubling thread spread on social media Instagram page, "murda_ink__bmore" where threats were made and Mr. Eiswert's home address was posted publicly by a user, morninafta. To date, it appears that BCPS has made no effort to protect the home address and personal information of its employee, Mr. Eiswert.

53.    Politicians, including then Baltimore County Executive Johnny Olszewski, publicly condemned the defamatory and hateful language.

54.     Mr. Eiswert and his family received many hate-filled messages and threats of violence. The threats became so worrisome that Mr. Eiswert required a protective service from the Baltimore County Police Department to ensure his family's safety. One individual stated to Mr. Eiswert that the "world would be a better place if you were on the other side of the dirt."

55.     BCPS hastily suspended and removed Mr. Eiswert from his position as Principal of Pikesville High School, and BCPS Superintendent Rogers offered statements condemning the language in the recording, thereby implying that it was genuine. At no time did Superintendent Rogers or BCPS show support for Mr. Eiswert despite knowledge that the audio was fake and defamatory. At no time did Superintendent Rogers or BCPS correct the record knowing that it was false and causing harm to Mr. Eiswert and his family.

56.     Within 48 hours of the Fake Audio being published, Mr. Eiswert's union representatives provided BCPS with neutral and credible expert analysis concluding with certainty that the Fake Audio was not genuine. Upon information and belief, BCPS has never been provided with any information showing that the Fake Audio was genuine and, upon information and belief, BCPS never undertook its own investigation to determine whether the Fake Audio was authentic. If such an investigation occurred, neither Mr. Eiswert nor his representatives were made aware of its findings.

57.     At the request of his union representatives, Mr. Eiswert also took, and passed, a polygraph test on January 19, 2024, corroborating the experts' conclusion that Mr. Eiswert did not make the comments depicted in the Fake Audio. This information was immediately conveyed to BCPS.

58.     Assistant Principal Albert, who was identified as the other participant in the Fake Audio conversation, was also interviewed by police detectives and denied that she was present for

any of alleged comments as depicted in the audio recording. BCPS knew this information and still failed to defend Mr. Eiswert, either publicly or privately, despite the defamatory campaign against Mr. Eiswert and his family.

      59.    Baltimore County Police then retained multiple forensic experts to analyze the Fake Audio:

      a.   Dr. Catalin Grigoras is a forensic analyst and professor at the University of Colorado, Denver. Dr. Grigoras is a contractor with the Federal Bureau of Investigation (FBI) and is an expert analyst who agreed to provide an extensive analysis of the audio file in question. Dr. Grigoras concluded that the recording contained Al-generated content with human editing after the fact, which added background noises for realism.

      b.   Dr. Hany Farid, an audio expert from the University of California, Berkely, concluded that the recording was manipulated, and multiple recordings were spliced together using unknown software.

      60.    Yet, BCPS continued to punish Mr. Eiswert while refusing to correct the record in support of him. He was locked out of his email, cut off from colleagues, ostracized publicly, and Superintendent Rogers refused to inform the public that Mr. Eiswert did not make the comments depicted on the Fake Audio. Dr. Rogers only offered the tepid qualification that she could not "confirm" the genuineness of the recording. All this enabled and encouraged the public destruction of Mr. Eiswert.

      FALLOUT

      61.    Unsurprisingly, given the extremely inflammatory nature of the Fake Audio, news organizations carried the story throughout the local, state, federal, and international media.

62.     Following substantial publicity surrounding these events, Darien was arrested at BWI airport and charged with several crimes, including witness retaliation, related to his actions against Mr. Eiswert for reporting his nefarious behavior. Darien is currently awaiting trial in the Circuit Court for Baltimore County.

63.     The repeated dissemination of the Fake Audio has defamed Mr. Eiswert's character and has damaged his reputation personally and professionally. Articles and social media posts calling for his firing, as well as encouraging violence against Mr. Eiswert are still on the internet. The damage has been allowed to remain unabated since it was released.

64.     Mr. Eiswert depends on his reputation to maintain employment in the public-school setting. Moreover, the damage to his reputation is likely to impact his future employment opportunities.

65.     Mr. Eiswert's employment was, in part, governed by the "Master Agreement between the Board of Education for Baltimore County and the Council of Administrative and Supervisory Employees" (hereinafter, "CASE Agreement").

66.     In particular, section 8.2 of the Case Agreement states:

> No employee shall be disciplined, reprimanded, reduced in compensation, or deprived of any professional advantage as defined in this agreement without just cause. When imposing discipline the Board will, in appropriate circumstances, employ progressive discipline which consists of corrective counseling, warning letter, official letter of reprimand, suspension and discharge. The sequential use of these steps will depend upon the nature and the severity of the infraction.

67.     Section 8.5 states:

> No member shall be disciplined without due process.

68.     Without the required contractual and constitutional due process, required notice, or just cause whatsoever, Mr. Eiswert was removed from his role as principal of Pikesville High School within 24 hours of the publication of the Fake Audio and, in violation of the contract and

14

constitutional due process, was not immediately reinstated once BCPS became aware that the Fake Audio was not authentic. In further violation of his contract and constitutional due process, Mr. Eiswert has been reassigned from his position at Pikesville High School.

69.    In a meeting conducted with the Board and Mr. Eiswert, BCPS informed Mr. Eiswert that he would be assigned to be the principal of Sparrows Point Middle School. When Mr. Eiswert asked to be heard during that meeting, BCPS abruptly ended the meeting and refused to answer any questions.

70.    Mr. Eiswert has suffered reputational harm and severe emotional distress manifesting physically.

## COUNT I
### 42 U.S.C.A. § 1983 against Defendant Dazhon Darien

71.    All previous paragraphs are incorporated herein.

72.    At all relevant times, Defendant Dazhon Darien was acting in his capacity as an athletic director employed by BCPS, acting within the scope of his employment, and acting under color of State law.

73.    Defendant Darien engaged in activities or failed to act in violation of Plaintiff's rights secured and protected under 42 U.S.C.A. §1983 and, including, but not limited to, the Fourteenth Amendment of the United States Constitution.

74.    Specifically, Darien, while employed as an administrator at Pikesville High School, recorded Mr. Eiswert's conversations and then used BCPS networks and equipment to access software tools, including AI, to create a fake audio clip falsely purporting to document defamatory racist and antisemitic comments by Mr. Eiswert.

15

75.    Darien then used his influence as an administrator to disseminate the Fake Audio to Defendants Waddell and Ravenell with the understanding that they would publicize the Fake Audio.

76.    Darien knew that creating and disseminating the defamatory Fake Audio and conspiring with Waddell and Ravenell to publicize the Fake Audio would deprive Mr. Eiswert of his protected interest in continued and future employment as an educator and administrator.

77.    Darien's conduct was objectively unreasonable, and Darien acted with deliberate indifference to Mr. Eiswert's rights.

78.    As a direct and proximate result of Darien's violation, Mr. Eiswert has suffered, and will continue to suffer in the future, mental anguish, reputational damage, out-of-pocket losses, past and future medical expenses, personal humiliation, psychological injuries, lost and/or diminished earnings, and other economic and non-economic damages recoverable under the law.

79.    Plaintiff further alleges that all of Plaintiff's injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff, either directly or indirectly.

WHEREFORE, Plaintiff, Eric Eiswert, demands judgment against Defendant Darien in an amount in excess of Seventy-Five Thousand Dollars ($75,000) plus interest, costs and attorney's fees in actual damages, compensatory damages and punitive damages.

**COUNT II**
**42 U.S.C.A. § 1983 against Defendants Waddell and Ravenell**

80.    All previous paragraphs are incorporated herein.

81.     At all relevant times, Defendants Waddell and Ravenell were acting in their capacities as teachers at Pikesville High School employed by BCPS, acting within the scope of their employment, and acting under color of State law.

82.     Defendants Waddell and Ravenell engaged in activities or failed to act in violation of Mr. Eiswert's rights secured and protected under 42 U.S.C.A. §1983 and, including, but not limited to, the Fourteenth Amendment of the United States Constitution.

83.     Specifically, Defendants Waddell and Ravenell, in their capacities as employees of BCPS, received the defamatory Fake Audio from Defendant Darien and then distributed it directly to students and otherwise through social media.

84.     Because of their position as teachers, the students to whom the Fake Audio was published assumed that it was genuine.

85.     Waddell and Ravenell knew that disseminating the Fake Audio and conspiring with Darien to publicize the Fake Audio would deprive Mr. Eiswert of his protected property interest in continued and future employment as an educator and administrator.

86.     Defendants Waddell and Ravenell's conduct was objectively unreasonable, and they acted with deliberate indifference to Mr. Eiswert's rights.

87.     As a direct and proximate result of Defendants Waddell and Ravenell's conduct, Mr. Eiswert has suffered, and will continue to suffer in the future, mental anguish, reputational damage, out-of-pocket losses, past and future medical expenses, personal humiliation, psychological injuries, lost and/or diminished earnings, and other economic and non-economic damages recoverable under the law.

88.     Plaintiff further alleges that all of Plaintiff's injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of

Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff, either directly or indirectly.

WHEREFORE, Plaintiff, Eric Eiswert, demands judgment against Defendants Waddell and Ravenell in an amount in excess of Seventy-Five Thousand Dollars ($75,000) plus interest, costs and attorney's fees in actual damages, compensatory damages and punitive damages.

**COUNT III**
**Negligent Hiring, Retention, and/or Supervision against Defendant BCPS**

89.     All previous paragraphs are incorporated herein.

90.     BCPS is solely responsible for vetting applicants for employment with BCPS, including Defendant Darien.

91.     BCPS owed a duty to students and school staff, including Mr. Eiswert, to use reasonable care when vetting potential employees, including Defendant Darien.

92.     BCPS' duty is heightened because teachers and administrators are placed in positions of authority of minors.

93.     BCPS breached its duty by, among other things:

    a.   Failing to adequately vet Defendant Darien before allowing him to be hired as a teacher with BCPS and then promoted to athletic director;

    b.   Failing to discover that Darien lacked mandatory qualifications, including a teaching license, college degree, and required certifications before approving Darien to be hired as a teacher and then promoted to athletic director;

    c.   Failing to discover that Darien had been removed from his school employment in Florida due to document fraud and allegations of improper texting with students; and

d.  Failing to ensure that Darien was prevented from using BCPS resources once it was made known that Darien's contract would not be renewed.

94.    BCPS acted with gross negligence in failing to recognize Defendant Darien's lack of qualifications, education, experience, training, and certification in hiring, employing, retaining, and supervising Darien as athletic director at Pikesville High School.

95.    BCPS knew, or should have known, that breaching its duty placed students, teachers, and other staff, including Mr. Eiswert, as significant risk of injury.

96.    As a direct and proximate result of BCPS's negligence in hiring Darien as a teacher and then promoting him to athletic director at Pikesville High School, Mr. Eiswert was severely injured and suffered substantial harm as outlined in this Complaint.

97.    Plaintiff further alleges that all of Plaintiff's injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff, either directly or indirectly.

WHEREFORE, Plaintiff, Eric Eiswert, demands judgment against Defendant BCPS in an amount in excess of Seventy-Five Thousand Dollars ($75,000) plus interest, costs and attorney's fees in actual damages, compensatory damages and punitive damages.

**COUNT IV**
**Negligent Supervision against Defendant BCPS**

98.    All previous paragraphs are incorporated herein.

99.    BCPS owed a duty to students and school staff, including Mr. Eiswert, to use reasonable care when supervising employees, including promptly responding to, and investigating, credible allegations of bad behavior.

100.    BCPS' duty is heightened because teachers and administrators are placed in positions of authority of minors.

101.    BCPS breached this duty by failing to adequately respond to Mr. Eiswert's reports about Defendant Darien's bad behavior, including bullying staff and students, and financial impropriety.

102.    Even after Mr. Eiswert used proper channels to report this behavior to Ms. Joseph and Mr. Sye, BCPS negligently continued to allow Defendant Darien access to the School System network, equipment, and infrastructure. BCPS is responsible for the acts committed by its employees within the scope of their employment who were negligently entrusted with the School System's network, equipment, and infrastructure.

103.    As a direct and proximate result of BCPS' conduct, Darien was able to use the School System's network, equipment, and infrastructure to surreptitiously record Mr. Eiswert's private conversations and then research and use artificial intelligence tools to create and disseminate the defamatory Fake Audio, causing Mr. Eiswert severe injury and other damages.

104.    Plaintiff further alleges that all of Plaintiff's injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff, either directly or indirectly.

WHEREFORE, Plaintiff, Eric Eiswert, demands judgment against Defendant BCPS in an amount in excess of Seventy-Five Thousand Dollars ($75,000) plus interest, costs and attorney's fees in actual damages, compensatory damages and punitive damages.

**COUNT V**
**42 U.S.C.A. § 1983 against Defendants McCall, Watts-Hitchcock, and Rogers**

105.    All previous paragraphs are incorporated herein.

106.    At all relevant times, Defendants McCall, Watts-Hitchcock, and Rogers were acting within the scope of their employment with BCPS and acting under color of state law.

107.    Defendants McCall, Watts-Hitchcock, and Rogers were responsible for vetting and approving candidates for employment and promotion at BPCS, including Defendant Darien.

108.    Defendants McCall, Watts-Hitchcock, and Rogers knew that it was certain that failing to engage in any meaningful effort to vet new employees and current employees applying for promotion would result in unqualified and dangerous individuals like Defendant Darien gaining employment and using their positions to cause injuries to students and school employees, including Mr. Eiswert.

109.    Defendants McCall, Watts-Hitchcock, and Rogers's conduct was objectively unreasonable and deliberately indifferent to Mr. Eiswert, along with students, their parents, and other BCPS employees, in failing to make any effort to ensure that Defendant Darien held the minimum qualifications for the positions he held at BCPS and that Darien did not pose a danger to those around him.

110.    Defendants McCall, Watts-Hitchcock, and Rogers knew that acting with deliberate indifference by failing to meet their responsibilities placed many people, including Mr. Eiswert, at substantial risk of physical and emotional harm.

111.    As a direct and proximate result of Defendants McCall, Watts-Hitchcock, and Rogers's deliberate indifference, Darien was hired and promoted, and then, foreseeably, engaged in criminal behavior to deprive Mr. Eiswert of his constitutional rights, including under the 14th Amendment.

112.    Mr. Eiswert suffered physical and emotional injuries, was removed from his job, arbitrarily disciplined, and publicly shamed and embarrassed because Defendants McCall, Watts-

21

Hitchcock, and Rogers allowed Defendant Darien, an unqualified person who previously engaged in criminal behavior, including inappropriate behavior with minor students, to be hired by BCPS and then promoted to athletic director.

113.    As a direct and proximate result of Defendants McCall, Watts-Hitchcock, and Rogers's violation, Mr. Eiswert has suffered, and will continue to suffer in the future, mental anguish, reputational damage, out-of-pocket losses, past and future medical expenses, personal humiliation, psychological injuries, lost and/or diminished earnings, and other economic and non-economic damages recoverable under the law.

114.    Plaintiff further alleges that all of Plaintiff's injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff, either directly or indirectly.

WHEREFORE, Plaintiff, Eric Eiswert, demands judgment against Defendants McCall, Watts-Hitchcock, and Rogers in an amount in excess of Seventy-Five Thousand Dollars ($75,000) plus interest, costs and attorney's fees in actual damages, compensatory damages and punitive damages.

### Count VI
### 42 U.S.C.A. § 1983 *Monell* Claim
### (vs. BCPS)

115.    All previous paragraphs are incorporated herein.

116.    BCPS has maintained a widespread pattern and/or practice of failing to adequately vet applicants for employment and promotion.

117.    BCPS' failure to adequately vet applicants for employment and promotion is so widespread that it can be considered BCPS' official policy.

118.    Dr. Myriam Rogers, superintendent of BCPS, acknowledged that BCPS followed its official policy in vetting Defendant Darien that resulted in the placement of an unqualified, dangerous individual in a position of authority over minors.

119.    Here, Defendant Darien failed to meet the minimum qualifications to be hired as a teacher, but BCPS either failed to discover the obvious falsifications on Darien's resume, or it ignored them.

120.    Defendant Darien also failed to meet the minimum qualifications for promotion to athletic director, but BCPS either failed to discover the obvious falsifications on Darien's resume, or it ignored them.

121.    BCPS's duty is heightened because the people that it hires have power and authority over minors.

122.    BCPS has engaged in a widespread pattern or practice of failing to ensure that teachers and administrators meet the minimum required qualifications for their positions.

123.    For example, multiple teachers at Pikesville High School were hired with conditional certifications that required them to meet continued obligations to maintain the conditional certifications but failed to meet those obligations, resulting in loss of their status.

124.    Despite actual or constructive knowledge that these teachers failed to maintain the required minimum certifications, BCPS took no action.

125.    Other teachers, including at Pikesville High School, were hired despite lacking the minimum required qualifications all together, or were hired on the condition that they complete the requirements promptly. But even when these teachers failed to complete the requirements, BCPS took no action.

126.    These examples, from just one school in Baltimore County, indicate a custom or practice of failing to vet candidates that is so widespread that it should be considered the official policy of BCPS.

127.    Upon information and belief, other disciplinary and hiring issues are sealed and not subject to public discovery, limiting Mr. Eiswert's ability to cite other instances of hiring or disciplinary issues.

128.    When placing an individual in an administrative position, including athletic director, BCPS knows that the individual has significant discretion and authority, including the collection and use of public funds and donations, and the power to discipline students and faculty.

129.    BCPS' failure to discover that Defendant Darien was not a college graduate, did not have one—much less two—master's degrees, did not have required certificates, lied about *all* of his previous employment, and was fired for fraud and inappropriate behavior toward students in another state is so egregious that it must be the official policy or custom at BCPS.

130.    The failure here is obvious that BCPS had actual knowledge of the widespread and ongoing failure to vet applicants and was deliberately indifferent in failing to correct the problem.

131.    It was foreseeable to BCPS that its deliberate indifference toward failing to correct the gross failures in hiring would place students and faculty, including Mr. Eiswert, at serious risk of physical and emotional injuries.

132.    As a direct and proximate result of BCPS's official custom/policy and failure to take corrective action, Mr. Eiswert has suffered and will continue to suffer in the future mental anguish, reputational damage, out-of-pocket losses, past and future medical expenses, personal humiliation, psychological injuries, lost and/or diminished earnings, and other economic and non-economic damages recoverable under the law.

24

133.    Plaintiff further alleges that all of Plaintiff's injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff, either directly or indirectly.

WHEREFORE, Plaintiff, Eric Eiswert, demands judgment against Defendant BCPS in an amount in excess of Seventy-Five Thousand Dollars ($75,000) plus interest, costs and attorney's fees in actual damages, compensatory damages and punitive damages.

## COUNT VII
### Defamation/Slander and Libel Against Defendants Darien, Ravenell, and Waddell

134.    All previous paragraphs are incorporated herein.

135.    At all times relevant to these proceedings, Defendants Darien, Ravenell, and Waddell were acting in their capacity as employees and agents of BCPS and conducted their tortious acts in the course of their employment.

136.    On January 16 and 17, 2024, Defendants Darien, Ravenell, and Waddell published a fabricated, false, and defamatory audio recording depicting the racist and antisemitic statements allegedly made by Mr. Eiswert to other individuals with the explicit intention that the defamatory statement be published to the public.

137.    These statements were defamatory on their face in tending in injure Mr. Eiswert in his profession and employment, and further, in impugning him to be racially prejudiced and bigoted and unfit to serve in his role as principal of Pikesville High School.

138.    The Fake Audio was and is known to be to be false by Defendants Darien, Ravenell, and Waddell. The Fake Audio statement was, or should have been, known to be false by Defendants Darien, Ravenell, and Waddell prior to their intentional dissemination of the Fake Audio to the public, including members of the BCPS and Pikesville High School community. The

Fake Audio recording was made using computer technology and artificial intelligence with the intent to defame and harm Mr. Eiswert, both personally and professionally. The Fake Audio intentionally exposed Mr. Eiswert to "public scorn, hatred, contempt, and ridicule" and imputed to Mr. Eiswert the incapacity or unfitness for his occupation, profession, office, and position, including leading others to the conclusion that Mr. Eiswert was unfit to continue to serve as principal of Pikesville High School, had poor character, and otherwise irreparably harmed Mr. Eiswert's reputation.

139.    Defendants Darien, Ravenell, and Waddell made, and caused to be published, false claims about Mr. Eiswert without basis in fact intentionally and/or with reckless disregard for the truth and with actual malice.

140.    Defendants Darien, Ravenell, and Waddell published the defamatory and fabricated statements to other individuals including the media, members of the BCPS and Pikesville High School community, and the public at large, who reasonably understood the publication and recording to be defamatory.

141.    Defendants Darien, Ravenell, and Waddell's defamatory and fabricated statements published to other individuals has subjected and continues to subject Mr. Eiswert and his family to public hatred, contempt and ridicule. As a result, Mr. Eiswert has suffered actual damages to his reputation, loss of professional opportunities, and other pain and suffering including, but not limited to:

      a.   Injury to his reputation;

      b.   Loss of the appointment as principal of Pikesville High School;

      c.   Public scorn, hatred, ridicule, and harassment;

      d.   Severe mental anguish;

    e.   Severe emotional distress;

    f.   Embarrassment;

    g.   Loss of future employment opportunities; and

    h.   Other injuries and damages.

142.    The creation, broadcasting, publication and adoption of fabricated and false claims purportedly made by Mr. Eiswert involving racial and religious discrimination is defamation *per se*.

143.    Plaintiff further alleges that all of Plaintiff's injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff, either directly or indirectly.

WHEREFORE, Plaintiff, Eric Eiswert, demands judgment against Defendants Darien, Ravenell, and Waddell individually and in their official capacity as agents and employees of BCPS, in an amount in excess of Seventy-Five Thousand Dollars ($75,000) plus interest, costs and attorney's fees in actual damages, compensatory damages and punitive damages.

## COUNT VIII
### Defamation/Slander and Libel Against Defendant BCPS as Respondeat Superior to Defendants Darien, Ravenell, and Waddell

144.    All previous paragraphs are incorporated herein.

145.    Defendants Darien, Ravenell, and Waddell were acting in their capacity as employees and agents of BCPS and conducted their tortious acts in the course of their employment. Defendant BCPS is responsible for all of the acts committed by its employees within the scope of their employment.

146.    Mr. Eiswert asserts all claims against Defendants Darien, Ravenell, and Waddell related to Defamation/Slander and Libel against BCPS as respondeat superior to Defendants Darien, Ravenell, and Waddell and fully incorporates the allegations in Count VII of this Complaint as if fully restated herein.

147.    Plaintiff further alleges that all of Plaintiff's injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff, either directly or indirectly.

WHEREFORE, Plaintiff, Eric Eiswert, demands judgment against Defendant BCPS in an amount in excess of Seventy-Five Thousand Dollars ($75,000) plus interest, costs and attorney's fees in actual damages, compensatory damages and punitive damages.


Respectfully submitted,

WAIS, VOGELSTEIN, FORMAN,
KOCH & NORMAN, LLC

KEILTY BONADIO


_Brian M. Cathell, Esq. (CPF No. 0912150138)_
Matthew B. Thompson, Esq. (CPF No. 1506160310)
1829 Reisterstown Road, Suite 425
Baltimore, Maryland 21208
(410) 998-3600
Brian@malpracticeteam.com
matt@malpracticeteam.com
*Attorneys for Plaintiff*

Nicholas C. Bonadio, Esq.
(CPF No. 0912150093)
One South Street, Suite 2125
Baltimore, Maryland 21202
410-469-9953
nbonadio@kblitigation.com
*Attorney for Plaintiff*