# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ERIC EISWERT              *

    Plaintiff              *

v.                             *

                                 Civil Action No.: 1:25-cv-00226-RDB

DAZHON DARIEN, et al.         *

    Defendants
                      *      *      *      *      *      *      *

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ALL CLAIMS AGAINST DEFENDANTS BOARD OF EDUCATION OF BALTIMORE COUNTY, HOMER MCCALL, BOBETTE WATTS-HITCHCOCK, AND MYRIAM ROGERS

Defendants, Board of Education of Baltimore County, Homer McCall, Bobette Watts-Hitchcock, and Myriam Rogers, by their attorneys, Cullen B. Casey and Gregory L. VanGeison, respectfully submit this memorandum of law in support of their motion to dismiss all claims asserted against them in this action. Those claims are found in Counts III, IV, V, VI, VIII, X and XI of the First Amended Complaint.

## INTRODUCTION

### A.    Jurisdiction in this Court.

This case arises from a much-publicized incident involving Pikesville High School in Baltimore County, Maryland. In January of 2024, an audio file of Eric Eiswert's voice, the then principal at the school, disparaging the school's Black and Jewish students, was released to the press. The audio file, as it turns out, was Mr. Eiswert's voice altered with computer technology to make it appear that Mr. Eiswert had made the disparaging statements when he had not. Dahzon Darien, the athletic director at Pikesville High School at the time, is alleged to have created the audio file and initiated its dissemination to the public. Mr. Darien was charged criminally for his

conduct. Zoe Waddell and Shaena Ravenell, teachers at the school, are alleged to have assisted Mr. Darien in disseminating the audio file such that it was made public.

Mr. Eiswert filed suit in the Circuit Court for Baltimore County against Mr. Darien, Ms. Waddell, and Ms. Ravenell. Mr. Eiswert included as defendants the Baltimore County Board of Education (the "Board") and three Board of Education administrators – Myriam Rogers, the Superintendent of Schools, Homer McCall, Chief of Human Resources, and Bobette Watts-Hitchcock (the "Board Defendants"). The Board and the Board Defendants removed this case to this Court on the grounds of federal question jurisdiction, 28 U.S.C. § 1331. Mr. Eiswert sued the Board and the Board Defendants pursuant to 42 U.S.C. § 1983 for violation of his rights under the United States Constitution in Counts V and VI of his original Complaint. Mr. Eiswert asserted State law claims against the Board and Board Defendants in Counts III, IV, and VIII of the original Complaint. This Court had jurisdiction over those claims under 28 U.S.C. § 1367(a).

On February 14, 2025, the Board and Board Defendants moved to dismiss the original Complaint in its entirety. (ECF## 14 and 14-1). In response, Mr. Eiswert filed a First Amended Complaint ("Amended Complaint") on February 28, 2025. (ECF# 25). The Board and Board Defendants once again move to dismiss this case in its entirety. The Counts in the Amended Complaint against the Board are Counts III, IV, VI, VIII, and X. The Counts against the Board Defendants are Counts V and XI.

**B.     The Claims made in this Action.**

Mr. Eiswert's Amended Complaint contains eleven Counts. The federal claim against the Board is Count VI, which alleges that the Board is responsible to Mr. Eiswert under 42 U.S.C. § 1983 for a violation of his Constitutional rights through the case law developed under *Monell v. Dept. of Soc. Services*, 436 U.S. 658 (1978). Mr. Eiswert's federal claim against the Board

Defendants, also pursuant to § 1983, is pled in Count V. The remainder of the Counts subject to this motion to dismiss are State law claims. Count III is against the Board and is a claim for negligent hiring. Count IV is against the Board is for negligent supervision. Counts VIII and X are against the Board in *respondeat superior* for defamation and invasion of privacy respectively. The sole State law claim against the Board Defendants is found in Count XI and is for "gross negligence."

### C. The Grounds for this Motion.
#### 1. Federal claims.

This memorandum addresses the federal claims first, followed by the State law claims. Mr. Eiswert's *Monell* claim against the Board, Count VI, fails to state a cause of action against the Board. Mr. Eiswert fails to identify in his Amended Complaint a cognizable Constitutional injury caused by the Board. Moreover, the Board, as an arm of the State of Maryland, is not a "person" under § 1983 and, therefore, is not subject to suit under § 1983 under a long line of decisions in this District.

In Count V, Mr. Eiswert alleges that the Board Defendants acted in their official capacities and in their personal capacities by allegedly violating his Constitutional rights and seeks relief pursuant to § 1983. Like the Board itself, the Board Defendants, when acting in their official capacities, are not "persons" subject to § 1983 and therefore have no liability to Mr. Eiswert for alleged Constitutional violations. Again, however, Mr. Eiswert fails to identify a cognizable Constitutional injury that would support a claim against the Board Defendants in either their personal or official capacities.

#### 2. State Claims.

With regard to the Maryland state law Counts for negligent hiring and negligent supervision asserted against the Board, Counts III and IV, Mr. Eiswert has not pled a sufficient causal

connection between the hiring of Mr. Darien and the actual conduct engaged in by Mr. Darien against Mr. Eiswet, a co-employee and superior. The causal connection between Mr. Darien's having been hired and Mr. Eiswert's injuries is simply that Mr. Darien was present at Pikesville Higt School to perform acts complained of and no more.

For Counts VIII and X, for defamation and invasion of privacy, Mr. Eiswert seeks to hold the Board responsible for the actions of Mr. Darien, Ms. Waddell, and Ms. Ravenell in disseminating the audio file. According to Mr. Eiswert, those three disseminated the audio file intending to do Mr. Eiswert harm. Where an employee commits an intentional tort his employer is not responsible in *respondeat superior* when the employee's conduct does not further the employer's business purpose or where the employee commits the act to protect his own interests, even if the act is performed during work hours at an authorized workplace. Here, the Amended Complaint alleges that Darien, Waddell, and Ravenell acted intentionally and for their own purposes. There are no allegations in the Amended Complaint that any of them were furthering the Board's purposes. As a result, their actions are outside the scope of their employment as a matter of law on the facts as pled, and their actions cannot be binding on the Board.

Count XI is against the Board Defendants only and is for "gross negligence." If a plaintiff can plead and prove that a county board employee acted with actual malice and gross negligence the plaintiff can recover a judgment against the county board employee personally. Otherwise, the county board employee is immune from the enforcement of any judgment against him. Just as "malice" is not a stand-alone tort in Maryland, "gross negligence" is not a stand-alone tort. Rather, the state of mind necessary to prove either malice or gross negligence must be plead within and coupled with a compatible tort for a plaintiff to avoid the immunity afforded county board employees. Mr. Eiswert, in this case, has not alleged any recognized Maryland tort against the

4905-8934-4556, v. 1

Board Defendants that carries a culpable state of mind, and his stand-alone "gross negligence" count, therefore, must be dismissed.

<h2 align="center">PERTINENT ALLEGATIONS OF THE AMENDED COMPLAINT</h2>

Although the allegations of the Amended Complaint are lengthy, the facts underlying the claims asserted are relatively straightforward. Mr. Eiswert alleges he was the victim of crimes committed by Dazhon Darien while Mr. Darien was employed by the Board as an athletic director at Pikesville High School. (Amended Complaint, ¶ 1). Mr. Darien began his employment with the Board in the Spring of 2023 as a social studies teacher at Randallstown High School. (*Id.*, ¶ 28). Mr. Eiswert alleges Mr. Darien was not qualified to teach in the Baltimore County School System because he never acquired a Maryland teaching certificate and did not have the requisite educational background. (*Id.*, ¶ 36). Additionally, his resume and application for the position purportedly contained several fabrications and exaggerations. (*Id.*, ¶ 2).

Prior to the start of the 2023-24 school year, Mr. Darien was hired as the athletic director at Pikesville High School. (*Id.*, ¶ 33). The Amended Complaint states that Mr. Eiswert quickly recognized Mr. Darien's incompetence and reported Mr. Darien's failures to the appropriate person at the Board as early as September of 2023. (*Id.*, ¶¶ 43-45). Mr. Eiswert claims that Mr. Darien arbitrarily fired a coach, purchased team uniforms without authority, bullied students and staff, and was suspected of misappropriating fundraising money. (*Id.*). Mr. Eiswert alleges that the Board did not act with the urgency he expected in addressing his Amended Complaints about Mr. Darien. (*Id.*, ¶ 45). In his role as school principal, Mr. Eiswert informed Mr. Darien in December of 2023 that his contract as athletic director at Pikesville High School would not be renewed for the 2024-2025 academic year. (*Id.*, ¶ 46). After this, according to the Amended Complaint, Mr. Darien accessed school resources to record Mr. Eiswert's voice and, with the aid of computer tools, created

4905-8934-4556, v. 1

an audio file which appeared to be Mr. Eiswert's making offensive comments about Black and Jewish students. (*Id.*, ¶¶ 50-51). He did so intending to hurt Mr. Eiswert both personally and professionally in response to being told he would not be retained for the upcoming school year. (*Id.*, ¶ 50).

Mr. Darien emailed the audio file to Ms. Waddell and Ms. Ravenell, who allegedly published the audio file to students, when they knew, or should have known, that circulating the audio file to the public would harm Mr. Eiswert. (*Id.*, ¶ 53). Ms. Ravenell allegedly published the audio file to the NAACP and several media outlets. (*Id.*, ¶ 54). As might have been expected by those who placed the audio file in the public eye, its contents became "viral" nationally across social media and traditional media. (*Id.*, ¶ 55). Mr. Eiswert alleges that the purposeful dissemination of the audio file, which was meant to harm him personally and professionally, did just that. (*Id.*, ¶ 76).

## STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), this Court considers whether a Amended Complaint contains "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Bradley v. Balt. Police Dep't*, 887 F. Supp. 2d 642, 644 (D. Md. 2012) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). As stated by the U.S. Supreme Court, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative

4905-8934-4556, v. 1

level, on the assumption that all the allegations in the Amended Complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (internal citations omitted).

## **ARGUMENT**

I. **MR. EISWERT FAILS TO STATE A CONSTITUTIONAL CLAIM AGAINST EITHER THE BOARD OR THE BOARD DEFENDANTS, BECAUSE NEITHER THE BOARD NOR THE BOARD DEFENDANTS ARE "PERSONS" UNDER §1983 AND MR. EISWERT HAS FAILED TO IDENTIFY ANY COGNIZABLE CONSTITUTIONAL INJURY.**

A governmental entity cannot be held liable for a Constitutional violation made by one of its employees under § 1983 on the theory of vicarious liability. *See Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). The question becomes, then, at what point can a governmental entity be held directly liable to a plaintiff for an alleged deprivation of a Constitutional right under § 1983? Here, in Count VI, Mr. Eiswert seeks to hold the Board liable under § 1983 through the *Monell* doctrine. Under *Monell*, a municipality incurs liability only where the entity "follows a custom, policy, or practice by which [its individual employees] violate a plaintiff's constitutional rights." *Owens v. Baltimore City State's Attorney's Office,* 767 F.3d 379, 402 (4th Cir. 2014) (citing *Monell,* 436 U.S. at 694); *Carter v. Morris,* 164 F.3d 215, 218 (4th Cir. 1999). "Only if [an entity] subscribes to a custom, policy, or practice can it be said to have committed an independent act, the *sine qua non* of *Monell* liability." *Id.* Given that a finding of liability under *Monell* requires identifying an unconstitutional action undertaken by the municipality itself (*i.e.,* by a policy or custom), it necessarily follows that a plaintiff may not avail himself of arguments which smack of *respondeat superior* or vicarious liability. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989) (citing *Monell,* 436 U.S. at 694-695).

The barrier that Mr. Eiswert faces here is that the *Monell* theory does not apply to a State or one of its agencies. Section 1983 reads in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983. The Supreme Court of the United States has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Boards of Education in Maryland are state agencies and are not "persons" for the purposes of § 1983. *Posey v. Navarro*, No. CV DLB-23-3453, 2025 WL 744065, at *3 (D. Md. Mar. 7, 2025); *Doe #1 v. Bd. of Educ. of Somerset County*, 2023 WL 375189, *9 (D. Md. 2023); *Brummell v. Talbot County Bd. of Educ.*, 2023 WL 2537438, *10 (D. Md. 2023); *Moore v. Bd. of Educ. of Baltimore County*, 2017 WL 3172820, *6 (D. Md. 2017). Therefore, Mr. Eiswert has no claim against the Board under § 1983. Likewise, since the Board Defendants, acting in their official capacities, are not "persons" under § 1983, they cannot be liable to Mr. Eiswert under § 1983. *Will*, 491 U.S. at 71.

Moreover, "[t]he first step in any [§ 1983]…claim is to pinpoint the specific right that has been infringed." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017)(citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). Here, Mr. Eiswert complains of the Board's and the Board Defendants' alleged failure to properly vet applicants or enforce its minimal requirements for teacher qualification violated his rights under the 14th Amendment. (Amended Complaint, ¶¶ 138-153). The damage that Mr. Eiswert claims he suffered as the result of the Board's alleged policy of not properly vetting the hiring of Darien are reputational. (*Id.*, ¶¶ 160-161). Indeed, the overriding theme of Mr. Eiswert's lawsuit is that he lost his reputation and standing in the community because of the audio file created by Darien and disseminated by others to the media and, thus, the world.

8

Counsel for the Board and Board Defendants have found no cases where a court has found that an employee has a liberty or property interest in the qualifications possessed by his fellow employees. More importantly, the U.S. Supreme Court has held that a claim for damage to one's reputation caused by a state actor, standing alone, is not a deprivation of "liberty" or "property" under the 14th Amendment, no matter how severe the damage to the person's reputation. *Paul v. Davis*, 424 U.S. 693, 712 (1976).

In the *Paul* case, the Chiefs of Police for the City of Louisville, Kentucky and Jefferson County Kentucky circulated a flyer to approximately 800 merchants close to the Christmas shopping season with photographs of known shoplifters. *Id.* at 694-95. The plaintiff in the case appeared on page two of the flyer. *Id.* at 695. Although the plaintiff had been charged with shoplifting, the charges were dropped against him shortly after the flyers were circulated. *Id.* A copy of the flyer made its way to the plaintiff's employer, the local Louisville newspaper. The plaintiff was called in to his boss's office to explain himself. Although he did not fire the plaintiff, the boss told him he "had best not find himself in a similar situation." *Id.* at 596. The plaintiff sued the two chiefs of police under § 1983 for violation of the 14th Amendment. The Supreme Court held "that the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Id.* at 712. Indeed, the instruction given by the Court in *Paul* is equally applicable to this case:

> [r]espondent in this case cannot assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment. That being the case, petitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of 'liberty' or 'property' interests protected by the Due Process Clause.

*Id.*

4905-8934-4556, v. 1

## II. PLAINTIFF FAILS TO SUFFICIENTLY ALLEGE CAUSES OF ACTION AGAINST THE BOARD DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES (COUNT V).

In Count V of his Amended Complaint, Plaintiff asserts claims under 42 U.S.C. § 1983 against the Board Defendants because they were collectively "responsible for overseeing BCPS' hiring program" and thus responsible for BCPS failing to properly vet Defendant Darien and thus deliberately indifferent to Mr. Eiswert's constitutional rights. As discussed above, an employee has no constitutionally protected interest in the job qualifications of a fellow employee. And, under the Supreme Court's holding in the *Paul* case, Mr. Eiswert has no cognizable claim under the 14th Amendment for reputational damage.[1] Therefore, the inquiry regarding Mr. Eiswert's claim under Count V need go no further.

Even if reputational damages were sufficient to support a 14th Amendment claim, Plaintiff still fails to properly assert a § 1983 claim against the Board Defendants in their individual capacity. To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 also requires a showing of <u>personal fault</u> based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to

---

[1] Mr. Eiswert alleges that the Board Defendants allowing Mr. Darien to be hired caused him to be removed from his job and arbitrarily disciplined. (Amended Complaint ¶ 134). However, he does not claim that any of the Board Defendants participated in any discipline of him. *E.,g.,* ("they [referring to the Board itself] removed Mr. Eiswert from his position as principal…." Amended Complaint ¶ 7; "BCPS hastily suspended and removed Mr. Eiswert from his position as Principal of Pikesville High School…." *Id.* ¶ 61; "BCPS continued to punish Mr. Eiswert while refusing to correct the record in support of him." *Id.* ¶ 66; "Without the required contractual and constitutional due process, required notice, or just cause whatsoever, Mr. Eiswert was removed from his role as principal of Pikesville High School within 24 hours of the publication of the Fake Audio and, in violation of the contract and constitutional due process, was not immediately reinstated once BCPS became aware that the Fake audio was not authentic. In further violation of his contract and constitutional due process, Mr. Eiswert has been reassigned from his position at Pikesville High School." *Id.* ¶ 74; and, finally, "In a meeting conducted with the Board and Mr. Eiswert, BCPS informed Mr. Eiswert that he would be assigned to be principal of Sparrows Point Middle School." *Id.* ¶ 75. He also does not claim that he lost his employment with the Board; rather, he alleges that he now has a different job with the Board and claims no difference pay between his current job and his former job. *Id.* ¶ 74-75.

10

be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). There is no *respondeat superior* liability under § 1983. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Here, Plaintiff simply alleges that Ms. Watts-Hitchcock was personally involved with hiring Mr. Eiswert and that Mr. McCall and Ms. Rogers failed to appropriately supervise her. Plaintiff fails to properly assert supervisory liability against Mr. McCall and Ms. Rogers under the narrow confines permitted by the Fourth Circuit - "[a] supervisor can only be held liable for the failings of a subordinate under certain narrow circumstances." *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1032 (D. Md. 2019) (internal quotation marks and citations omitted). "Liability of supervisory officials under § 1983 'is premised on a recognition that supervisory indifference or tacit authorization of subordinates misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Saltz v. City of Frederick*, 538 F. Supp. 3d 510, 552 (D. Md. 2021) (quoting *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001)). A plaintiff must allege (1) the supervisor had actual or constructive knowledge that their subordinate was "engaged in conduct that posed a pervasive and unreasonable risk of unconstitutional injury to the plaintiff;" (2) that the supervisor's response to such knowledge was "so inadequate as to show deliberate indifference to or tacit authorization of the alleged offense practice;" and (3) "there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

4905-8934-4556, v. 1

To qualify as "pervasive," a plaintiff must demonstrate that the conduct is widespread or at least has occurred on several occasions. *Id*. It is not sufficient to point to a single incident or isolated incidents. *Id*. A supervisor cannot be expected to promulgate rules and procedures covering every "conceivable occurrence," or "guard against the deliberate criminal acts of his properly trained employees "when they have "no basis upon which to anticipate the misconduct." *Id*. (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th. Cir. 1984)). But a supervisor's "continued inaction in the face of documented widespread abuses ... provides an independent basis" for § 1983 liability against that official for his or her deliberate indifference or acquiescence to "the constitutionally offensive conduct of his subordinates." *Slakan*, 737 F.2d at 373; *see Shaw*, 13 F.3d at 799.

In *Saltz*, the Fourth Circuit analyzed a supervisory claim under § 1983 and ultimately dismissed the claims against the Police Chief of Frederick. 538 F. Supp. 3d at 552. There, the Complaint contained no allegations that the Police Chief personally participated in the events underlying the Plaintiff's claim or was even aware of them. *Id*. Additionally, the Plaintiff did not claim other examples of constitutional violations of which the Police chief failed to act. *Id*. Additionally, the evidence in the record did not establish that the Police Chief was involved during the underlying protests on which the claims were premised. *Id*.

Here, although Plaintiff seeks to allege other incidents of constitutional violations allegedly known by Mr. McCall and Ms. Rogers, allegedly poor hires of other employees does not implicate a "liberty" or "property" interest held by Plaintiff. The allegations of other instances of other alleged negligence in hiring is just that – evidence of other negligence, not evidence to support alleged constitutional violations.

4905-8934-4556, v. 1

Finally, for any of the Board Defendants to be found liable for a constitutional violation, they would have to be found deliberately indifferent to Plaintiff's constitutional rights. As this Court is well aware, deliberate indifference "is a stringent standard of fault, requiring proof that an [actor] disregarded a known or obvious consequence of his action." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 411 (1997). "Deliberate indifference is a very high standard" – the "Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences...." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).

Once again, nothing about any of the Board Defendants alleged acts or omissions in allegedly overseeing the BCPS' hiring program that failed to properly vet candidates like Defendant Darien constitutes deliberate indifference to Plaintiff's constitutional rights. Accordingly, for all the reasons detailed above, the Board Defendants are entitled to dismissal of Count V.

## III. INDIVIDUAL BOARD DEFENDANTS ARE IMMUNE FROM SUIT – QUALIFIED IMMUNITY (COUNT V).

As detailed above, Plaintiff's allegations against Board Defendants fail to overcome the high hurdles to impose supervisory liability or personal liability in a § 1983 claim. However, even if such a claim was viable, the Board Defendants are entitled to qualified immunity. Qualified immunity provides protection for government officials sued in their individual capacities "insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would know." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see Moxley v. The Town of Walkersville*, 601 F. Supp.2d. 648, 664-65 (D. Md. 2009). The doctrine of qualified immunity "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability

13

when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). As noted by this Court in *Moxley*, the "Supreme Court has 'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation'." *Id*. at 664 (*quoting Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

To determine whether qualified immunity applies, courts generally conduct a two-step inquiry. First, courts ask whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, ... show the [official's] conduct violated a constitutional [or statutory] right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, courts ask whether the right at issue "was clearly established in the specific context of the case - that is, [whether] it was clear to a reasonable [official] that the conduct in which he allegedly engaged was unlawful in the situation he confronted." *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002). "The plaintiff bears the burden of proof on the first question - i.e., whether a constitutional violation occurred .... [and] [t]he defendant bears the burden of proof on the second question - i.e., entitlement to qualified immunity." *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007) (internal citations omitted).

Here, Plaintiff has not met their burden of establishing that a "clearly established" constitutional right has been violated.[2] Rather, Plaintiff simply asserts that the Board Defendants had a duty to oversee the proper vetting of employees. However, nowhere is there any mention of how the mere failure of the Board (Darien's actual employer) to conduct thorough vetting constitutes a direct violation of Plaintiff's constitutional rights by the Board Defendants.[3] Instead, Plaintiff argues that inadequate employee screening ultimately led to a bizarre chain of events that

---

[2] As noted above, Plaintiff has failed to demonstrate any constitutional right that has been violated by the Board Defendants.

[3] Although not necessary for resolution, it similarly cannot be established that a reasonable official would understand that a failure to properly vet Defendant Darien as potential candidate for employment would violate Plaintiff's constitutional rights.

culminated in the deprivation of undetermined constitutional rights. In sum, nothing about any of the alleged improper acts or omissions demonstrates conduct that "violate[s] clearly established constitutional rights of which a reasonable person would know." For these reasons, Board Defendants are entitled to qualified immunity.

IV.    **THE AMENDED COMPLAINT FAILS TO PLEAD A CAUSAL LINK TO ESTABLISH A NEGLIGENT EMPLOYMENT CLAIM (COUNTS III & IV).**

In Counts III & IV, Plaintiff asserts claims against the Board for negligent hiring, retention, and/or supervision ("negligent employment"). In order to establish a *prima facie* claim for negligent employment a plaintiff must prove the following elements: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, supervising, training, or retaining the employee as the proximate cause of plaintiff's injuries. *Latty v. St. Joseph's Soc. of Sacred Heart, Inc.*, 198 Md. App. 254, 272 (2011); *Bryant v. Better Business Bureau of Greater Maryland, Inc.*, 923 F.Supp. 720 (D.Md.1996).

In a negligent employment claim, "there is a rebuttable presumption that an employer uses due care in hiring an employee." *Evans v. Morsell*, 284 Md. 160, 165 (1978). In cases involving the intentional torts of employees, the critical standard is "whether the employer knew or should have known that the individual was potentially dangerous." *Id*. In this case, even assuming *arguendo* that the Board was negligent in the decision to employ Darien, his alleged acts to commit criminal conspiracy to fabricate Plaintiff's voice in an effort to destroy his reputation were not a natural or foreseeable consequence of any such negligence.

A similar analysis applies when considering whether the Board's actions were the proximate cause of Plaintiff's alleged injuries. Proximate cause exists when, at the time of the

tortfeasor's negligent act, the tortfeasor "should have foreseen 'the general field of danger,' not necessarily the specific kind of harm to which the injured party would be subjected as a result of the defendant's negligence." *Yonce v. SmithKline Beecham Clinical Labs*., Inc., 111 Md. App. 124, 139 (1996) (citing *Stone v. Chicago Title Ins. Co.*, 330 Md. 329, 337 (1993)). The chain of causation remains unbroken if an intervening occurrence "is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the [initial tortfeasor's] negligence is an essential link in the chain ..." *Id.* at 139 (quoting *State ex rel. Schiller v. Hecht Co.*, 165 Md. 415, 421 (1933)).

Here, Plaintiff cannot satisfy the proximate cause element of their negligent employment claim as no reasonable person would have foreseen that Defendant Darien would engage in such a bizarre and criminal scheme. "[A] particular harm is foreseeable if a person of ordinary prudence should realize that the condition of which he or she has notice enhances the likelihood that the harm will occur." *Hemmings v. Pelham Wood Ltd. Liab. Ltd. P'ship*, 375 Md. 522, 541 (2003). The chain of events leading to Mr. Eiswert's injury are too attenuated to be considered a foreseeable consequence of negligent hiring. Defendant Darien's actions were not a foreseeable consequence of the Board's alleged failure to properly vet his credentials. His criminal actions were an independent, intervening act that was not reasonably foreseeable. Therefore, Plaintiff cannot establish the necessary legal elements to support a claim for negligent employment and Counts III and IV must be dismissed.

## V.  MR. EISWERT FAILS TO STATE A CLAIM AGAINST THE BOARD FOR DEFAMATION OR FALSE LIGHT (COUNTS VIII AND IX).

In Count VII of his Amended Complaint, Mr. Eiswert sues Mr. Darien, Ms. Waddell, and Ms. Ravenell (the "Defamation Defendants") for defamation. Based on the allegations in Count VII, Mr. Eiswert sues the Board in Count VIII, seeking to hold the Board vicariously liable for the

16

alleged defamation committed by the Defamation Defendants under the theory of *respondeat superior.* Count VIII must be dismissed on two grounds: First, Mr. Eiswert does not state a claim for defamation against the Defamation Defendants under the elements of Maryland defamation law. Second, Mr. Eiswert alleges no facts upon which a court could find that the Defamation Defendants acted within the scope of their employment in releasing the audio file; rather, the allegations of the Amended Complaint assert that the Defamation Defendants acted in their own personal interest instead of in advancing the interests of the Board.

> The elements of a defamation claim under Maryland law are well defined:
> [T]o present a prima facie case of defamation, a plaintiff must establish four elements: (1) that the defendant made a defamatory statement to a third person. (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm.

*Offen v. Brenner*, 402 Md. 191, 198 (2007). In the present case, Mr. Eiswert does not allege that the Defamation Defendants made any statements concerning him. He alleges that the Defamation Defendants circulated an audio file that, with the aid of computer software, contained words spoken by Mr. Eiswert arranged in a manner to be offensive to the public. Because defamation provides a cause of action only for words written or spoken by the defendant about the plaintiff, Mr. Eiswert has no claim for defamation against the Defamation Defendants. Because he has no claim for defamation against the Defamation Defendants, he cannot have a claim in *respondeat superior* against the Board for defamation.

Moreover, Mr. Eiswert alleges no facts that would cause the Board to be vicariously liable for either defamation or false light. He has now amended his original Complaint, after the Board pointed out in its initial memorandum in support of its motion to dismiss that Mr. Eiswert had asserted no plausible facts to show that the actions of the Defamation Defendants were taken in furtherance of the business interests of the Board. (ECF#14-1 at 16-17). Mr. Eiswert continues to

claim that Mr. Darien created the audio file for the purpose of harming him personally and professionally. (Amended Complaint, ¶ 50). He also alleges Ms. Waddell and Ms. Ravenell acted purposely to harm Mr. Eiswert or with reckless disregard of whether dissemination of the audio file would harm him. (*Id.* ¶ 53). Mr. Eiswert alleges that the Defamation Defendants knew that the audio file contained statements falsely attributed to him. (*Id.*, ¶¶ 165; 180-181). Nowhere in the Amended Complaint does Mr. Eiswert allege facts to support the proposition that the creation of the audio file and its dissemination were within the duties assigned to the Defamation Defendants by the Board. Nor do the factual allegations demonstrate that any acts done by any of the Defamation Defendants were in the furtherance of the business interests of their employer. The mere chanting of the phrase "acting in their capacity as employees" in the Amended Complaint is not enough to establish a claim of vicarious liability for the employer.

For an employee's conduct to be within the scope of employment, "the conduct must be of the kind the servant is employed to perform…." *Sawyer v. Humphries*, 322 Md. 247, 255 (1991) (quoting *E. Coast Lines v. M. & C.C. of Balto.*, 190 Md. 256, 285 (1948)); *Guerrero v. Murray*, 2024 WL 1050890, *3 (D. Md. 2024). Other factors to consider are whether conduct is of the kind that the employer authorized the employee to perform, whether the conduct occurred during a period temporally connected to the employment, whether the conduct occurred in the geographical vicinity of where the work was to be performed, and whether the conduct was performed, at least in part, to further the employer's business interests. *Sawyer*, 322 Md. at 255.

Here, there are no factual allegations that Mr. Darien was employed to create any audio files for any reason, let alone to purposely harm a co-employee's personal and professional reputation. Likewise, there are no factual allegations in the Amended Complaint to suggest that either Ms. Wadell's or Ms. Ravenell's job duties included disseminating highly offensive and false

information about a co-employee to students or the public in general. The allegations against the Defamation Defendants are that they meant to harm Mr. Eiswert, a purpose personal to them, but those allegations cannot be construed to assert that the Defamation Defendants were furthering the Board's business purposes. Finally,

> in cases involving intentional torts committed by an employee, …[the Supreme Court of Maryland] has emphasized that where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment.

*Sawyer*, 322 Md. at 256-57. "This is particularly true where the employee's conduct was 'unprovoked, highly unusual, and quite outrageous.'" *Guerrero*, 2024 WL 1050890, *3 (quoting *Sawyer*, 322 Md. at 257). Disseminating damaging information to students and others outside the school system, where that information falsely attributes racial and religious bigotry to a co-employee and superior, is "highly unusual and quite outrageous." That type of conduct cannot be said to further the interests of the Board, which is organized to provide K through 12 education to the children of Baltimore County.

## VI.  PLAINTIFF FAILS TO STATE A CLAIM FOR "GROSS NEGLIGENCE" (COUNT XI).

Gross negligence is not a stand-alone cause of action. Maryland did away with causes of action based on gradations of negligence over a century ago. Randolph Stuart Sergent, *Gross, Reckless, Wanton, and Indifferent: Gross Negligence in Maryland Law*, 30 U. Balt. L. Rev. 1, 9 (2000). Moreover, a finding of gross negligence under Maryland law does not result in an award of damages that would be different from a damages award in an ordinary negligence claim. In other words, a jury's finding of gross negligence does not create enhanced damages for the plaintiff. Rather, the proper pleading and proof of gross negligence permits a plaintiff to recover

19

damages *personally* from certain defendants who would otherwise not be personally liable to pay any damages.  The proper pleading and proof of "gross negligence" or malice is an avoidance of the approximately twenty-four statutory immunities afforded individuals under Maryland law.  *Id.* at 1.

By way of example, Maryland does not recognize a separate cause of action for "malice" or "punitive damages."  The standard for proving punitive damages, actual malice, must be pled within a recognized tort cause of action and, if proven, permits the award of punitive damages. Torts such as negligence cannot contain a claim for punitive damages, because proof of actual malice takes the claim out of negligence, which requires simple proof of the failure to act with reasonable care rather than a culpable state of mind.  *See Owens-Illinois*, 325 Md. at 463. Therefore, to obtain punitive damages, a plaintiff in Maryland must allege facts that show actual malice and tie those allegations to a tort cause of action that is compatible, such as intentional infliction of emotional distress, fraud, battery, assault, intentional defamation, and the like.

In similar fashion, allegations sufficient to support "gross negligence" must be tied to a compatible tort claim for a plaintiff to avoid a statutory immunity.  As will be discussed below, simple negligence is not compatible with the "gross negligence" standard, just as "actual malice" is not compatible with simple negligence.  Mr. Eiswert has pled no Maryland cause of action that is compatible with the "gross negligence" standard, as he has pled no Maryland tort claims against the Board Defendants to which he could attach the "gross negligence" standard to avoid their statutory immunity.  Indeed, Mr. Eiswert's only Maryland tort claim against the Board Defendants is "gross negligence."

In this case, the Board Defendants possess statutorily granted qualified immunity from being found personally responsible for paying any judgment in this case, so long as they acted

4905-8934-4556, v. 1

within the scope of employment and without malice and gross negligence.  Md. Code Ann., Cts. & Jud. Proc. § 5-518(e) reads as follows:

> (e)  A county board employee acting within the scope of employment, without malice and gross negligence, is not personally liable for damages resulting from a tortious act or omission for which a limitation of liability is provided for the county board under subsection (b) of this section, including damages that exceed the limitations on the county board's liability.

*Id.*  Thus, if a plaintiff proves ordinary negligence against a county board employee acting within the scope of his employment, the employee is immune from paying the judgment.  *Neal v. Baltimore City Board of School Commissioners*, 467 Md. 399, 422 (2020).  In that setting, the plaintiff can only look to the county board to satisfy the judgment.  *Id.*, § 5-518(h).

Mr. Eiswert does not allege in this case that the Board Defendants acted with malice.  Proof of malice, of course, requires showing that a defendant acted with evil motive, intent to injure, ill will, or fraud.  *Owens-Illinois*, 325 Md. 420, 460 (1992).  In other words, proof of malice requires evidence that demonstrates the defendant's state of mind – an intent to harm.

Gross negligence "is an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them."  *Stracke v. Estate of Butler*, 465 Md. 407, 420-21 (2019) (internal quotation marks and citations omitted).  It requires proof "to establish that the defendant…had a wanton or reckless disregard for human life…Only conduct that is of extraordinary and outrageous character will be sufficient to imply this state of mind."  *Id.* at 421 (internal quotation marks and citations omitted).

The use of "malice and gross negligence" together in § 5-518 is instructive.  As Maryland's Supreme Court has noted, "[g]ross negligence is not just big negligence."  *Id*. at 421.  Rather, like malice, gross negligence focuses on the defendant's *state of mind*, while ordinary negligence

focuses on whether the defendant's *conduct* was unreasonable. Randolph Stuart Sergent, *supra*, 30 U. Balt. L. Rev. at 38 (collecting the then existing Maryland cases construing "gross negligence" in the context of immunity statutes); *see also Stracke*, 465 Md. at 422 (requiring that there be evidence that paramedics made a *deliberate and conscious* choice not to assist a patient before a jury could find gross negligence); *McCoy v. Hatmaker*, 135 Md. App. 693, 713-14 (2000) (same).

"Gross negligence is a question of law when reasonable [people] could not differ as to the rational conclusion to be reached." *Stracke*, 465 Md. at 420 (internal quotation marks and citation omitted). In the present case, there are no allegations in the Amended Complaint that the Board Defendants' conduct was of an extraordinary and outrageous character such as to imply a deliberate and conscious choice to harm Mr. Eiswert. Count XI asserts four factual settings that Mr. Eiswert contends amounts to gross negligence: (1) that the Board Defendants allegedly failed to properly vet the hiring of Darien (Amended Complaint ¶196); (2) that the Board Defendants allegedly failed to properly investigate the authenticity of the audio file (*Id.*); (3) that the Board Defendant's failed to properly protect Mr. Eiswert from public condemnation and reputational damage (*Id.*); and (4) that the Board Defendants allegedly continued to discipline Mr. Eiswert despite evidence that the audio file was not authentic (*Id.*).

Allegedly failing to vet a plaintiff's co-employee during the hiring process does not demonstrate a deliberate and conscious choice to engage in conduct to harm Mr. Eiswert. Rather, at best, it might support an allegation of negligence. Again, a finding of gross negligence requires evidence of a state of mind, not merely conduct that is allegedly unreasonable under the circumstances. Just as negligent hiring could not support a claim for punitive damages because the actual malice standard is incompatible with simple negligence, it cannot support a claim for gross negligence. The same is true regarding Mr. Eiswert's allegation that the Board Defendants failed

22

to properly investigate whether the audio file was authentic. That alleged conduct arguably might be characterized as negligent, but negligence is not evidence of a culpable state of mind. Moreover, the Amended Complaint does not make factual allegations that any of the Board Defendant's job duties included or that their training entailed knowing how to properly verify the authenticity of an audio file.

The allegation that the individual Board Defendants failed to properly protect Mr. Eiswert from public condemnation and reputational damage also falls well short of a claim that could strip the Board Defendants of their statutorily granted immunity from personal liability to pay a judgment. In the first place, Mr. Eiswert does not allege, and the law does not provide, a duty imposed on one co-employee to another to protect that co-employee's reputation before the public. Moreover, the Amended Complaint lumps the three Board Defendants together regarding the alleged duty to protect a co-employee's reputation. Even if such a legal duty existed, which the Board Defendants deny, the Amended Complaint states no factual allegations that Defendants McCall and Watts-Hitchcock ever spoke to the public regarding Mr. Eiswert or that their employment included speaking to the public regarding co-employees. As the *Stracker* decision teaches, "[o]nly conduct that is of extraordinary and outrageous character will be sufficient to imply" the state of mind evidencing gross negligence. *Stracker*, 465 Md. at 421 (internal quotation marks and citation omitted). There are no allegations of fact that either Mr. McCall or Ms. Watts-Hitchcock's job duties included protecting an employee's reputation in the public. Mr. Eiswert's allegations against the Board Defendants regarding their alleged failure to protect his reputation before the public states no recognized Maryland tort cause of action and cannot meet the standard of conduct that is so extraordinary and outrageous that it evidences a corrupt state of mind sufficient to prove gross negligence.

4905-8934-4556, v. 1

Finally, Mr. Eiswert alleges that the Board Defendants continued to "discipline" him even though the evidence was that the audio file was altered. He does not allege anywhere in the Amended Complaint, however, that any of the individual Board Defendants personally participated in any alleged disciplinary action against him. *See, supra,* footnote 1 (outlining Mr. Eiswert's allegations regarding alleged discipline). None of Mr. Eiswert's allegations of alleged discipline assert actions taken by any of the three Board Defendants and, therefore, none of them can be found to have been "grossly negligent" in disciplining him as a matter of law.

Mr. Eiswert has not alleged any Maryland tort cause of action against the Board Defendants in this case. His claim for "gross negligence" cannot stand alone, just as a claim for "malice" could not stand alone. The factual allegations actually made by Mr. Eiswert regarding the Board Defendants do not demonstrate a culpable state of mind sufficient to strip the Board Defendants of the immunity provided to them by the Maryland General Assembly.

## CONCLUSION

For the reasons discussed above, the Baltimore County Board of Education, Homer McCall, Bobette Watts-Hitchcock, and Myriam Rogers, respectfully request that their motion to dismiss be granted.

/s/ Cullen B. Casey
Cullen B. Casey (Bar No.: 28577)
/s/ Gregory L. VanGeison
Gregory L. VanGeison (Bar no.: 07658)
Anderson, Coe & King, LLP
Seven Saint Paul Street, Suite 1600
Baltimore, MD 21202
(T) 410-752-1630/ (F) 410-752-0085
vangeison@acklaw.com / casey@acklaw.com
*Attorneys for Defendants Board of Education of Baltimore County, Homer McCall, Bobette Watts-Hitchcock, and Myriam Rogers*

24